IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ELAINE CHAO, Secretary of Labor, United States Department of Labor, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:06-CV-0495-RWS |
| LOCAL UNION 728, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, | ) ) ) ) ) ) | |
| Defendant. | ) | |

DECLARATION OF CYNTHIA M. DOWNING

| | | |
|---|---|---|
| City of Washington | ) | |
| | ) | SS |
| District of Columbia | ) | |

I, Cynthia M. Downing, declare as follows:

1. I am the Chief of the Division of Enforcement, Office of Labor-Management Standards (OLMS), United States Department of Labor (Department). I caused an investigation to be made into the protests concerning violations of the Labor-Management Reporting and Disclosure Act of 1959 (Act or LMRDA), alleged to have occurred during the election of officers of Local Union 728, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT, Local 728) on December 2, 2006. The election was conducted under the supervision of the Department pursuant to a Consent Decree and Order approved by Judge Richard W. Story of the U.S. District Court for the Northern District of Georgia on September 21, 2006. In this election, Alan Lamb received 72 more votes than Phillip Prince, the other candidate for the position of third trustee, the sole office to be filled under the supervised election.

2. Complaints were filed by three members of IBT Local 728, each alleging that Mr. Lamb's nomination on October 29, 2006 was invalid under IBT Local 728's Constitution and By-laws. The complaints were received by OLMS on October 30 and 31, 2006. The complaints allege that Mr. Lamb was improperly nominated because the member who seconded Mr. Lamb's nomination did not arrive at the nomination meeting until after the only other nominee for the position at issue had been nominated, seconded, and accepted the nomination. The complaints alleged that by delaying the close of the meeting until the arrival of the member to second Mr. Lamb's nomination and by failing to obtain Mr. Lamb's express acceptance of the nomination, the election supervisor failed to abide by the IBT Local 728's Constitution and By-laws.

3. Article VII, Section 8 of the Constitution and By-laws states: "Nominations shall not be closed until a call for further nominations has been made three times by the Chair without further nominations being made." Article VII, Section 9 of the Constitution and By-laws reads in pertinent part: "A member otherwise eligible to run for office shall become a bona fide candidate only upon his/her nomination for office and acceptance of the nomination. Candidates must accept nominations at the time made either in person or, if absent, in writing, and may accept nominations for only one office." The combined nomination and election notice for the supervised election stated: "Nominations shall be made orally from the floor by a member in good standing other than the nominee, and motion seconded by a member in good standing other than the nominee. Candidates must accept nomination at the time made either in person or, if absent, in writing."

4. After review of the investigation file, including the above-referenced documents, I have concluded that there is no merit to the allegation that the election supervisor violated IBT Local 728's Constitution and By-laws. This document requires that the local not close

2

nominations before providing an opportunity for members to nominate candidates, a purpose served by requiring that they not be closed before the chair, at least three times, solicits any further nominations. That requirement was plainly met here in that the nominations were not closed until after the call for further nominations was satisfied. Complainants would read Article VII, Section 8 as if it read: "Nominations *shall be closed* once the Chair calls, three times, for further nominations without further nominations being made." Their construction, however, is contrary to the actual language of Section 8; as shown, that section only prescribes a condition that must be met *before* nominations are closed. Likewise, they would read the nomination notice as requiring that a nominee be seconded before another member is nominated and seconded. But such a requirement is neither included in the Constitution and By-laws or the nomination notice. Both are silent as to the order of nomination and seconding.

5. Here, both Mr. Lamb and Mr. Prince were nominated, and Mr. Prince was seconded when the election supervisor was advised that a member who was to second Mr. Lamb's nomination was en route to the meeting and would arrive shortly. Under these circumstances, it was well within the election supervisor's discretion to hold the nominations open for a reasonable amount of time to permit the member's arrival. Although the investigation of the protests disclosed different estimates of the "delay" occasioned by the supervisor's decision, the supervisor's decision was appropriate under the circumstances. The election supervisor's actions were consistent with OLMS operating procedures, which require, in part, that the election supervisor "ensure that all members are afforded an opportunity to nominate candidates of their choice ... [and] that union practices applied at the nomination meeting are considered reasonable under the LMRDA." U.S. Department of Labor, *OLMS Operations Manual* p. 15-10.

6. After review of the investigation file, including the above-referenced documents, I have concluded that there is no merit to the allegation that Mr. Lamb's nomination was invalid

because he did not explicitly state that he was accepting the nomination.  Under IBT Local 728's Constitution and By-laws, a nominee is permitted to accept his or her nomination in writing or, if present at the nomination meeting, by accepting the nomination.  The latter alternative was satisfied here by Mr. Lamb's nomination, his identification of himself to members at the meeting while awaiting the arrival of the member to second his nomination, and the seconding of his nomination.  Under these circumstances, there could be no doubt about his acceptance of the nomination.  Neither the Constitution and By-laws nor the practicalities of the situation required an explicit written or verbal acceptance by Mr. Lamb.  Under the circumstances, his acceptance was plainly demonstrated by his conduct and the conduct of others at the meeting.

7. As the Department received no other protests concerning the election and it was conducted in accordance with the direction and supervision of the Department, I have no reason to believe that any violation of the LMRDA occurred during IBT Local 728's election of officers conducted on December 2, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of January 2007, in the City of Washington, District of Columbia.

CYNTHIA M. DOWNING
Chief
Division of Enforcement
Office of Labor-Management Standards
Employment Standards Administration
United States Department of Labor

4